Good morning. We have two appeals that are scheduled for oral argument this morning. The first is the United States of America v. James Heaton. Kristen Wright Nove is here for the appellate Heaton. Elizabeth Hathaway is here for the United States. Ms. Nove, you Good morning. My name is Kristen Nove and I represent Dr. James Heaton in this case. Dr. Heaton is a quintessential country doctor in the northern Georgia area. He was convicted of violating 841 with respect to three of his 2,000 patients that he saw. He was wrongfully instructed on the law with regard to his mens rea. The jury was wrongfully instructed with regard to the conjunctive disjunctive and they released an error that was so unbelievably vague the jury couldn't even follow it, much less the lawyers and judge who were actually trying to try the case. This error was not harmless. First, I'll begin speaking about the mens rea element. Throughout the trial, there were three charge conferences. At every charge conference, defense counsel brought up the fact that this should not be an and or standard, but it should be, excuse me, not an or standard, but it should be an and standard with regard to legitimate medical purpose and outside the scope, knowingly. Well, the district judge followed our precedent in United States v. Tobin and United States v. Obedian, get it not, precedent that we're bound by that says the statute is in the disjunctive. That's correct. But there's... How is there error if the court followed our precedent? Well, there's two different issues that we're looking at. First, with regard to the conjunctive disjunctive generally, but also with respect to the mens rea. What he requested was that Dr. Heaton not be authorized to be convicted on an objective standard, which is exactly what the court gave the jury instruction. Abbeon specifically relied on the 11th Circuit's decision in Ruan, or in Ruan, before the Supreme Court got a hold of Ruan in deciding that it was a two-prong test and the second prong was purely objective. That's still what Dr. Heaton objected to, what he objected to before the jury instructions at the charge conference, as well as afterwards. And it was doubled down on by the government in their argument when they told the jury that what Dr. Heaton was thinking was irrelevant when it came to the second prong. So this jury was authorized to convict a doctor based solely on a standard that Ruan said is completely wrong now. It's completely wrong. We're not prosecuting doctors just for being bad doctors. We're prosecuting doctors who are drug dealers. And the government must now prove that. They have to prove that intent beyond a reasonable doubt. Our jury was never given that option. They were told that they can be convicted solely based on subjective standard, solely based on a negligent standard, solely based on Dr. Heaton not following the specified rules and regulations, which there was extensive testimony about everything from extreme cases to less extreme. I'm trying to figure out how are you making a Ruan argument in this case? Well, Your Honor, I think the objection that was made was to the mens rea element, which is exactly what Ron has now said is dated. That's exactly what Ron says we can't do anymore, the government cannot do. That's what we relied on. That's what we brought to the Court's assert. Let me see if I'm understanding your argument. So if, as defense counsel argued, the word was and instead of or, would that have made the standard entirely subjective? Yes. If you simply changed that one word. Yes, because the request that we had was that the jury be instructed that knowingly prescribed medication that was not for a legitimate purpose outside the scope of discretion practice. That's what we requested. We requested that Judge Story remove the or from that instruction and the jury receive the full instruction. That's what we requested. So is there really a difference between the disjunctive issue and the mens rea issue or are they one and the same? Well, there's a little bit of a difference because we're not giving up the fact that it's still such a vague standard. But Ron's argument and the biggest issue we had was that there's this just objective medical standard that really is congruent to negligence and not to what Dr. Heaton actually intended. And it's significant because we have three patients here. This isn't a pill mill case. There's not patients lined up the door. There's not patients who are overdosing. It was three patients and all three patients testified and all three patients testified specifically about the extensive pain, extensive pain that all three of them had. And so our argument was there's clearly a legitimate medical purpose. Dr. Kaufman even testified that pain management is a legitimate medical purpose. Let's go back to the jury instructions because I think it's fairly clear about two things. One you did object to the and or. That's clear. You preserved that. But when I look at the jury instructions which I have here, the district court instructed that whether Dr. Heaton dispensed the controlled substance, quote, for no legitimate purpose does depend on the subjective belief. He clearly instructed a subjective belief standard on that prong. He went further and said that if he did it in good faith, then he dispensed the drugs for a good, for a legitimate. So you really have no wrong argument about the no legitimate medical purpose. Is that correct? That's correct with regard to the no medical purpose. So that's what I want to clarify. It's right there, all subjective standard. However, I agree with you as to the and or part, depending on what you think it is. He did instruct a objective standard. Outside the medical professional practice, he said that's an objective test as to what the standards are in the profession and whether he acted outside of it. Yes. So really we have three issues here. We have and or. We have no legitimate medical practice where it was okay because it was a subjective standard. That would comply with the wrong, right? Under the medical purpose. Yeah, yes. And then the failure was the objective test instruction on the outside the professional practice. Right? Yes. Okay. I mean, those are really the three issues. You clearly preserved the and or. Tell me how you preserved the, because I went back and looked at everything. You never said in the district court, I'm not subjective on the professional practice. Doesn't mean you can't raise it for the first time on appeal, but I didn't see you raise that in the district court. Well, thank you for that question. Let me clear that up. The issue with the objective test, and this is why we requested that the court remove the or. That was the whole soliloquy that we put in there at the second charge conference that the defense counsel was arguing. That it can't just be that he's violating objective medical standards, he being the It has to be in the phrase that we used and relied upon United States versus more in the Supreme court was that he has to be a non doctor, not a bad doctor, but a non doctor. And that was the reason why we said we have to give this jury some guidelines. We have to give them some standards. They have no standards. So we have to tell them what they need. And that's why we request that you remove the or and let it be that he knowingly prescribed medication for not a legitimate purpose. That the knowingly be construed to both. And that was the issue. And of course, we didn't specifically cite Ron because Ron wasn't even available yet. That didn't come out until after we filed our, I think my reply brief in this particular appeal. So while I agree, that is true. The jury received a subjective standard, but that doesn't save the government in this case. That doesn't save them because there's still this. Well, it just goes a little bit to plain, to harmless error because they did have to know and they, that it was a subjective test as to low, no legitimate medical purpose. Because there was a lot in there on the charge on subjective. The good faith would mean it was okay. He did this in good faith. I'm sorry. I didn't mean to interrupt you, Judge Hall. It says also, it means that he acted in accordance with what he reasonably believed to be proper. He said he didn't have to prove to you he acted in good faith. The burden proves in the government to believe that he did not subjectively believe that the dispensing the controlled substance was for a legitimate medical purpose. So, but then you still have this outside the medical practice and you have the or. Correct. And two things on that. First thing, that tells me what I've got to look at for harmless error, you see. The first thing is Justice Alito, just as an aside, that's exactly what he was talking about with that good faith, why it's problematic and why you can't, you have to have good faith all the time. That's his argument in the concurring opinion. But Justice Scalia in the United States has a very strong regard to harmless error, that if we're just looking at sufficiency and you've got two different prongs and the jury is properly instructed, in that instance, we can assume that a jury that's properly instructed can make the determination and we shouldn't go back and undo that. But when a jury is improperly instructed to begin with, they're given the wrong mens rea standard with regard to one prong, even if it's right on the other, then that doesn't save the government on harmless error. So that's the problem with our jury. And indeed, throughout the entire trial, and I'm sure Your Honor has looked at that extensively, throughout the entire trial, the argument was there is a legitimate medical purpose to prescribe this pain medication, clearly in all three patients. They all said so. The government's own expert testified about it. But they're authorized to convict based on any way that they want. Well, he instructed a subjective, you had to subjectively know it was not a legitimate medical purpose. Correct. But I don't believe he violated any standard. I think Judge Storey even said, now I'm confused. I don't know if violating a medical standard is per se a violation of 841. And we had a whole discussion about that. That came up pre-trial as well as it came up during the charge conference. That's another issue. So it's that objective standard that the jury was instructed on, that they were authorized to convict upon. And they did. That's what Ron and the Supreme Court has expressly said. This is no good anymore. You cannot do that. That's why the Supreme Court remanded Kahn to the Tenth Circuit, remanded Nomm to the Fourth Circuit to resolve that exact issue, to say we now have a new standard and the standard is no longer valid. They pretty much vacated and said, go back and look at homicidal. That's what they're doing. Everything, where every defendant fights Ron, they'll send it back. We GDR, we get them all the time. We get a whole bunch. Sometimes Ron has nothing to do with the case. Sometimes Ron's the heart of the case. It's all, they clean it out. They just say GDR everybody and we have to go figure it out whether it's harmless there or not. Whether it's been preserved, number one. Whether it's plain there. And then harmless there. That's what happens. So that's why I say harmless there is what the key to it is here. Because you did get subjective instruction on half of it. I'm sorry. I see that my time is up. You're answering my questions, not a problem. Thank you. I completely agree. It is a harmless error standard. But under what Justice Scalia said under Griffin, it doesn't say the problem is the jury was given the wrong instruction to begin with. Do we have an answer to your last question? You did. All right. Thank you, Ms. Novay. Thank you. Ms. Hathaway for the government. Good morning. It is the Court of Elizabeth Hathaway for the United States. Dr. Sheehan produced two legal arguments in his appeal. He raised the an or question that we were just talking about and whether the Controlled Substances Act was vague as applied to him. Both of those arguments are foreclosed by controlling authority of the circuit and none of those two arguments were abrogated by Ruan. Defendant did not preserve at the district court and then abandoned on appeal any mens rea Ruan-type argument. He didn't state that subjective intent was an objection during the—there were two charge conferences—during the second charge conference, and he certainly didn't preserve it after the district court read the jury instructions. On appeal, he didn't raise it in his initial brief, and when Ruan issued some four more months ago, he never sought a timely motion to submit supplemental authority to this court as the court allows. But defense counsel did file a motion to stay oral argument based on Ruan. What does it matter whether it's called a motion or a supplemental brief or a motion to stay? The government joined the motion to stay because one of the issues that was presented in the companion case was this and or distinction, and it was an issue that we thought the Supreme Court may take up, and because we thought it might have an actual effect on this case before us, we agreed to the stay that the defense asked for. It turns out the Supreme Court didn't address that issue at all, and so the issues that are in the defendant's brief were not addressed directly by the Supreme Court. The mens rea was something new, and again, they had every opportunity to file a motion with this court. Yeah, I looked at the CERC grant in Ruan. They actually granted CERC on the and or question, which is a split in the circuits, and then they do that opinion, answer this question, and we need answer on the other question, and they don't act like it's even in the case. It's bizarre. It was briefed, argued, it was all up there, and they rule on the one, and they don't rule on the other. I don't care what the standard is, I just want to know what it is, and they don't answer the question. And now they had Ruan or something up there, and they just looked at the question and or, they just GDR'd that the other day, and they don't answer the question there. They've got a whole bunch of cases up there, and they're not answering it. But you just said something I wanted to make sure I heard right. You said after, because you can ask for jury instructions, and you have a charge conference, and then it's all over. And I thought I heard you say after the charge was given, there was no, an objection saying I object to the charges given, because sometimes the charges given cure some problems. But you're saying there was never an objection. I assume they objected to the and or. After the charge was given, they objected to the and or. That's right. So they preserved the objections they made before, which was the and or, and some question about what is the usual course of professional practice. Okay. But they did specifically preserve an objection to the mens rea. Okay. After the charge was given. That's right. And before the charge was given, because they adopted, their objection after the charge was given was adopting their pre-charge objection. Yeah, but still sometimes after the charge is given, you can raise some new things. I don't think you have to, you're stuck with what you did before. I don't mean to imply that. I just wanted to be clear when I said they didn't object. They adopted the objection they had made before. But that was not about the subjective intent mens rea. In fact, counsel seemed to acknowledge that the objective mens rea applied to the usual course of professional practice. So that was never an objection that was preserved at the district court. And again, that was abandoned here on appeal. So if we look at the record in this case, where would we find evidence that establishes that the government proved that the prescriptions were outside the course of professional practice? This is all over the record. Dr. Kaufman set forth what the standards of the usual course of professional practice in the state of Georgia are. There are exhibits 305 and 306 from the trial. And the standards include things like conducting a physical exam of your patient, talking to your patient about the controlled substances that you are prescribing. It's things like looking for signs of addiction. If you see that your patient is addicted, refer them for counseling. Dr. King didn't do any of that. He prescribed controlled substances without an adequate physical exam, without getting a medical history. He increased opioid prescriptions, again, without a physical exam. He could see that his patients were drug users. He could see the track marks on Ms. Gramoa's arms. Ms. Wood told him that she had bought drugs down the street and that she was addicted. He never referred either one of them for addiction counseling. He just continued to prescribe the controlled substance and prescribed more. The evidence showed that Dr. Heaton did not perform any kind of physical exam for Mr. Gowder. That Mr. Gowder would come after hours, meet with Dr. Heaton in his office, not in his lab room. And Dr. Heaton would still prescribe opioids. He prescribed a prescription for 30 days. Two weeks later, he would prescribe another prescription in the same amount for a 30-day period, essentially doubling the prescription without an exam. Surely that was a sign of addiction. Dr. Heaton never checked to see if his patients were using the controlled substances. He never had a treatment plan for any of them. He did not have a treatment plan, even though he told the medical board that he would have a contract and a plan with his patients. So if the statute is in the conjunctive and the patient needs the opioid, the patient needs the pill, and we have the circumstances in this case, they have to get the pills from another doctor? No, Your Honor. And to be clear, the exception is a legitimate medical purpose and in the usual course. And so what makes a prescription valid is that it has both of them. If your patient has a legitimate medical, or excuse me, the doctor has a legitimate medical purpose, And it's outside the course of ordinary business because of the other circumstances in the case, then he's violated the statute. But he could get the opioids from another, he could get it from Dr. Kaufman. That is a violation of oral professional practice. So for example, Your Honor, if you have a patient who's addicted to opioids, and they do have a chronic pain issue, then you're going to try to find other methods of prescribing. You're not going to prescribe them large amounts of oxycodone when they're already an opioid addict. You're going to send them to treatment. I'm not a medical professional, but there are other treatments I think Dr. Kaufman talked about. You don't just keep prescribing and keep feeding their addiction. Even though they may have a legitimate medical need, we have to look at what the purpose, and you have to follow the course. Well, you should have some MRIs or some exams or some x-rays or something in the file that documents what the pain is coming from. You have to have some examination to figure out where the pain is coming from. They say they have pain, but you've got to see if there's any objective basis for the reported pain. And as I understand it, there was no medical records of MRIs, tests, or anything to document the cause of reported pain. There's no doubt they all said they had pain. That's right, Your Honor. And these were pain medicines. That's right. And I think there was some sparse, maybe one random MRI from years ago, I think in Dr. Gowder's file. But there wasn't a consistent getting an MRI, trying to diagnose the pain, and treating that pain. The evidence showed that Dr. Heaton gave his patients what they asked for. Did I hear this right, that in each of the files you're supposed to keep copies of what you prescribe and there was no records of all these prescriptions in the files? That's right, Your Honor. I don't want to say no records. I think the evidence was Dr. Gowder may have had one prescription, even though Dr. Heaton prescribed it. And then you're supposed to have these treatment plans. And when the board caught him and tried to look into it, the board said you've got to have these written. They gave him a written treatment, an agreement. You're supposed to have the patient sign that the patient agrees not to sell it, to do this and that. The board told him you're supposed to have these agreements in the file, and none of these four victim clients had any signed agreements like the board told him to have in the file. But maybe I'm wrong on that. No, you're right, Your Honor. This was in 2010, and Dr. Heaton provided, saying I have these agreements, and then he didn't have any kind of treatment plan with any of the three patients. But did he actually have signed agreements by the patients? That's what I'm trying to find. No, Your Honor. Okay. And part of the reason, though, that's a form about why they wanted it, I think that was in the exhibit, but not a treatment plan of how they were going to address their medical issue and how they were going to have an informed consent over their use of opioids and things like that. That was not that in the files, no. And how many of the client victims was he having sex with? Just two of them? So I want to be clear. One of whom was charged conduct, and then we brought in a witness under 404B that he was also having sex with. From the pretrial conference, there was actually some indication that there were other patients as well, but at trial what we presented was the 404B witness as well as one of the patients. But was only one of them in the named indictment? That's right. Okay. And which one was that? That is Ms. Bromoa. Okay. So Ms. Wood was not? That's right. No, Your Honor. But they were having sex. And it's slightly confusing because it's another patient with the same initials, HW. Ms. White was the 404B evidence, which Dr. Heaton had admitted he had had sex with that patient. The medical board specifically told him that that would be a violation of the rules of professional conduct. And notwithstanding that, he continued to prescribe to Ms. Bromoa while he was having a sexual relationship with her. Again, that was evidence that the jury could find no legitimate purpose and outside the usual course of professional practice. Let's assume that I agree with you that the objection was not preserved to the mens rea issue on the second prong, but I don't think it's been abandoned. I believe you concede that there was error and that the error was plain, but you argue about the other two prongs of the plain error test. Tell me why those prongs aren't met. Yes, Your Honor. So under the plain error rule, Dr. Heaton would have to show that the jury would have acquitted had they been instructed on the subjective mens rea. And he can't do that, and for two reasons. First, going back to what we were talking about, the disjunctive and conjunctive. In order for the prescription to be valid, it has to be both for legitimate medical purpose and in the usual course of professional conduct. The evidence showed that these prescriptions were not issued for a legitimate medical purpose, and for that reason alone, the jury could have convicted, and Dr. Heaton can't show that they would have acquitted had they been instructed on the subjective mens rea to the other prong. As to the other prong, though, the evidence showed that Dr. Heaton was not following any of the usual course of professional practice. The evidence showed that he had essentially abandoned his role as a doctor. As I said, he was prescribing what the patients wanted when they asked for it in the amounts they wanted. I think Dr. Gowder is a good example where Dr. Heaton would prescribe what one of the pharmacists said was the highest amount of opioids, 150 30-milligram pills, and he also prescribed a second one. The prescriptions were filled in two different states where the PDMP wouldn't show, so he could be deceptive in prescribing huge amounts of opioids that even if it was a legitimate medical purpose the first time, it certainly wasn't for the second. Again, he didn't conduct any of the rules, any of the regulations, any of the suggestions, any of the recommendations of the board. To follow his own witness, another family practitioner in the same area testified that he understands the rules and he follows the rules, and frankly those rules are helpful, they're easy to follow, and they make sure that the doctors can prescribe on the safe side. He explained how he could follow those rules. Dr. Heaton didn't do any of them. He abandoned his role as a doctor and really just became a pill pusher, and for that reason, even if the jury had been instructed properly, the defense can't show that they would have acquitted. Judge Story had offered to have the jury pick which prong. The defense objected to that and asked that he not do that, so if there's any error on that side, that was invited by them. I see that I am out of time, so unless the court has any further questions, the government will rest on its brief and ask the court to affirm Dr. Heaton's convictions. All right. Thank you, counsel. Ms. Novay, you've reserved some time for rebuttal. Thank you. I'll obviously keep it brief based on the rebuttal that I have left. I think, first of all, I want to make it clear. Absolutely, at trial, we objected to the mens rea. That was the whole fight at trial. There is no daylight between what Iran decided and what we were objecting to. That's why we objected. Even though that was the correct standard under Tobin, we still objected. We still objected to it, even knowing, because there was still a problem. There was still a concern. At one point, defense counsel even said, I know this is the law, but I'm still objecting to it. So that's clearly preserved. The government's brief and its argument is incredibly fact-intensive. I understand why, but that does not save them. And under Ron, even applying for following none of the medical standards does not save the government because still there's the mens rea problem, and our jury was never given that. And when I try to do things, they're more than words. Of course, the reason why some of the patients, not all of them, requested certain treatments, it's because the doctors before Dr. Heaton were prescribing those exact pills, were prescribing those exact treatments. Hollywood came to Dr. Heaton because she wanted a doctor who was just closer. And under Ron, it doesn't matter what Dr. Kaufman would have done from his house in Sea Island prescribing yoga or another form of therapy. What matters is what Dr. Heaton did. And Dr. Heaton, by his own words, based on the pharmacist's testimony when he told her, I'm prescribing these treatments, these medications to Mr. Gowder to treat his back pain, he needs surgery. And all three patients were seeing other doctors during the time that they were seeing Dr. Heaton. All three of them had seen doctors before Dr. Heaton and after Dr. Heaton. In fact, Hollywood testified that she had a prescription for opioids on that day that she testified in court from another doctor after Dr. Heaton. And the argument the government is saying is exactly what Justice Alito rejected. We're not asking whether or not he's a good doctor. We're not asking whether or not he did it right or he could have done it another way or should he have notated it in the file. The testimony was he still had the conversations with the patients. He still had informed consent. There's even a text message that the government tried to admit between Dr. Heaton and Tamara Gramova where she says, I need more pills, and he says, fine, come make an office appointment. And that's exactly what she did. The government did not give Dr. Kaufman all of the records, which that came out at trial in a pretty embarrassing way with Dr. Kaufman, that he was thinking that she never even went to an office appointment. That was not true. In fact, it was the opposite. And Tamara Gramova, part of the problem was she initially said, I have no sexual relationship with Dr. Heaton and said that repeatedly. However, then after she became a paid informant, the story changed. So I think we have a lot of issues and a lot of problems. And under harmless error or plain error, the government does not win. It cannot win because the standard is flat wrong. It is wrong under Ron. It clearly harmed us. It harmed Dr. Heaton at trial. The jury was given a flat negligence standard. They were authorized. Let me make sure you agree with me. As I looked at Rion, there were two certified questions. One was on Andor. One was on Mendrea. Correct? Correct. And they only answered Mendrea, and they didn't touch the Andor. Is that correct? Essentially, if I can, and I see my time is up. Yes. What the court said was, which is correct, we're not going to address Dr. Cahn's Andor question. There were two consolidated cases, I know. Correct. But what the court did say was, this is the new standard. Now you need to decide if that fits under the new standard. And what you needed clearly is Mendrea for both. No longer an objective test. Okay. But they treated those in two separate tests, two separate questions. Yes. Well, I don't know that they treated it necessarily as two separate ones. I think the Supreme Court did its own thing with regard to Ron and created this new standard that clearly focused on the Mendrea, the intent, what the doctor intended to do when he was writing it. Thank you. That was helpful. Okay. Thank you. Thank you. Thank you. Thank you.